## Remedial System of Loaning v. New Hampshire Fire Insurance Company.

(Decided January 22, 1929.)

FRANK S. GINOCCHIO for appellant.

HITE H. HUFFAKER and W. H. TOWNSEND for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

A. C. Ray purchased a motor truck, paid a portion of the price in cash, and promised to pay the balance in several installments. The deferred payments were evidenced by notes and secured by a chattel mortgage on the truck. The notes and mortgage were assigned to the Remedial System of Loaning, and when this litigation arose there was due on the debt an unpaid balance of $1,062.84, with interest thereon from June 1, 1921. The New Hampshire Fire Insurance Company insured the truck in the sum of $2,400, with collision coverage, and with a clause making any loss payable to Ray and the Remedial System of Loaning. During the life of the policy the truck came in collision with a Southern Railway train, resulting in its destruction. At the same time Ray sustained severe personal injury and suffered substantial damage to his per-

sonal property which the truck was carrying. The damage to the truck alone was alleged to have been in excess of the total amount of the insurance coverage. The insurance company was notified of the loss, denied liability, and advised Ray to seek a settlement for the damage from the railroad company. Ray negotiated a settlement whereby the railroad company paid him $2,500, of which $1,000 was for damage to the truck. Ray gave the railroad company a complete release of "all claims of every sort and description against said railway company for damage to said automobile truck and its contents in said accident." The accident occurred on November 19, 1921, and the settlement was concluded on May 1, 1922. Ray instituted an action against the New Hampshire Fire Insurance Company to recover the full amount of the insurance. The mortgagee was made a party and called upon to assert its rights. The Remedial System of Loaning responded, and by a proper pleading asserted its right to recover of the insurance company the balance of $1,062.84 due it on the notes secured by the chattel mortgage on the truck. The insurance company defended on the ground that the release given by Ray to the railway company extinguished its right of subrogation and excused it from all obligations that ever existed by virtue of the contract. The court sustained the defense and dismissed the action, and the Remedial System of Loaning alone appeals. The case was disposed of on the pleadings and presents only issues of law.

The argument for the insurance company is that the release by Ray of all right of action against the railroad company extinguished the insurer's right of subrogation to the remedies of Ray against the alleged wrongdoer and relieved the insurance company of all obligation on the insurance contract. As to the appellant, it is insisted that its rights under the loss payable clause of the policy were derived from Ray, and were likewise destroyed by his act in executing the release. There is authority to the effect that if the assured, by voluntary action, unreservedly releases a wrongdoer for damage done to the insured property, he thereby discharges the insurance company to the extent its right of subrogation may have been defeated by such action of the assured. 14 R. C. L. 1405; Packham v. German Fire Ins. Co., 91 Md. 515, 46 A. 1066, 50 L. R. A. 828, 80 Am. St. Rep. 461; Farmer v. Union Ins. Co., 146 Miss. 600, 111 So. 584.

Authority also may be found to support the argument that the rights of a mortgagee under a loss payable clause in an insurance policy depend upon the continued validity of the principal contract, and if it has been forfeited by an act of the insured before the loss occurs, the incidental interest of the mortgagee is likewise lost. Insurance Co. v. Cheathem, 221 Ky. 668, 299 S. W. 545; Gardner v. Continental Ins. Co., 125 Ky. 464, 101 S. W. 908, 31 Ky. Law Rep. 89; Delaware Ins. Co. v. Greer (C. C. A.) 120 F. 916, 61 L. R. A. 137; Brecht v. Law, U. & C. Ins. Co. (C. C. A.) 160 F. 399, 18 L. R. A. (N. S.) 199.

But these authorities and the reasoning that supports them fail to reach or rule the question involved in the case now presented. Many instances may be found in the reports where the contract of insurance has been terminated or forfeited as to the mortgagor, but continued in force as to the mortgagee. Gillespie v. Scottish Union & N. Ins. Co., 61 W. Va. 169, 56 S. E. 213, 11 L. R. A. (N. S.) 146; Gilman v. Commonwealth Ins. Co., 112 Me. 528, 92 A. 721, L. R. A. 1915C, 758; Walker v. Queen Ins. Co., 136 S. C. 144, 134 S. E. 263, 52 A. L. R. 259, Anno. at page 278.

The reason the assured may not collect damages from the wrongdoer and also the loss under an insurance contract is that double indemnity is not allowed (Interstate Casualty Co. v. Stewart, 26 A. L. R. 432, annotation), and when an insurance company has been subjected to a loss by the wrongful act of a third party, it has a right of action for reimbursement against the wrongdoer (14 R. C. L. 1404; 26 C. J. 455; annotation, 26 A. L. R. at page 432). The right may be contractual under the provisions of the particular policy of insurance, or derivative under the equitable doctrine of subrogation; but in either case when the assured deprives the insurer of that valuable right, he is estopped to assert any claim on the contract of insurance. Indeed, an insurance company that has paid a loss may recover of the insured if he later collects damages from the wrongdoer (Illinois Auto Ins. Ex. v. Braum, 280 Pa. 550, 124 A. 691, 36 A. L. R. 1262, annotation 1268), and a wrongdoer with notice of the equities of the insurer may be held liable to the latter notwithstanding a settlement made with the insured in disregard of the rights of the insurance company. 26 C. J. p. 459; Hamilton Fire Ins. Co. v. Gregor, 246 N. Y. 162, 158 N. E. 60, 55 A. L. R. 921. See annotation, 54 A. L. R. 1454.

But here the appellant had a right to receive from the insurance company the amount due on its mortgage debt, and that right became a vested one when the truck was destroyed in the collision. Such right was not subject to be defeated without the consent of appellant by an act of the assured alone. If the insurance company had paid Ray the full amount of the loss and taken direct from him a full release, its liability to appellant would have remained unaffected. It was bound by the contract to pay appellant a certain sum in a certain contingency, and when the contingency arose it could not discharge its obligation in that particular by a payment to Ray. If Ray could not directly release appellant's right to the money due it on the contract, he could not defeat that same right indirectly by a collateral contract with the alleged wrongdoer. By the terms of the contract it was the plain duty of the insurance company, when the collision occurred, to pay Ray and the Remedial System of Loaning the amounts due them respectively by the terms of the insurance policy, and, if it desired to assert its right under the contract, or under the doctrine of subrogation, against the railroad company, it could have required an assignment from Ray. But it could not deny liability, direct or permit Ray to make a settlement with the alleged wrongdoer, which inured to its benefit, and then defeat the contractual rights of the mortgagee by invoking the settlement it had suggested and countenanced.

The appellant as a mere mortgagee had no right of action against the alleged wrongdoer (45 C. J. p. 1054; 11 C. J. p. 599), and payment of the amount due appellant under the mortgage would create no right of subrogation against the railway company. It may be that the insurance company will be entitled, upon payment of the amount due appellant, to an assignment of the notes and mortgage, and to be subrogated to its rights thereunder against Ray. Gillespie v. Scottish Union & N. Ins. Co., 61 W. Va. 169, 56 S. E. 213, 11 L. R. A. (N. S.) 143. But that question is not now presented. It is certain, however, that the rights of appellant were not defeated by Ray's settlement with the alleged wrongdoer, made without its consent, and which deprived the insurance company of no rights that would result from performance of its contract with appellant.

It is apparent from what has been said that the lower court erred in dismissing the action as to appellant when

it was entitled, under the facts manifested by the pleadings, to a judgment against the insurance company for the amount due on the debt secured by mortgage on the destroyed truck.

Judgment reversed for proceedings consonant with this opinion.