## Polk v. Western Bedding Co. et al.

*David F. Maxwell*, for plaintiff.
*George H. Detweiler*, for defendants.

GORDON, JR., P. J., February 28, 1940.—The question presented for our decision on this appeal from the Workmen's Compensation Board is whether the compensation payable to the widow of a workman, who died as a result of injuries received in an accident suffered in the course of his employment, is to be measured according to the rate of compensation in force at the time the accident happened, or to that in force at the time of the death. The exact question presented does not appear to have been decided heretofore by the appellate courts of this State, and the authorities in other States are not uniform upon the subject. Claimant's husband died on January 7, 1938, from injuries received during the course of his employment on December 2, 1937. The Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of April 26, 1929, P. L. 829, was in force at the time the accident happened. However, on January 1, 1938, six days before

claimant's husband died, the Act of June 4, 1937, P. L. 1552, went into effect. Under that act, the rate of compensation payable to a widow is substantially increased over that payable under the former act, and the Workmen's Compensation Board awarded compensation on the basis of the latter act, holding, in effect, that the act in force at the time of the death governs the rate to be paid, rather than that at the time the injury was suffered. The case is not without peculiar interest, in view of the fact that in 1939 the legislature again amended The Workmen's Compensation Act by reducing the compensation payable to a widow to the rate prescribed by the Act of 1929.

The theory upon which the board appears to have awarded the higher rate, and which is vigorously urged upon us by counsel for claimant, rests upon the proposition of law, well settled in Pennsylvania, and supported by a number of appellate decisions, among which Hennessey v. United Stove Repair Co., 68 Pa. Superior Ct. 553, and Jankaitis v. Harleigh Brookwood Coal Co., 134 Pa. Superior Ct. 125, are typical, that the right of a widow to compensation for her husband's death is a cause of action distinct from, and independent of, her injured husband's right to compensation, and hence, that as this claimant's right did not arise until after the amendment of 1937, when the higher rate was in effect, that act governs the compensation to which she is entitled.

With this contention, we cannot agree. On a superficial examination, there may be plausibility in this line of reasoning. It overlooks, however, the origin and fundamental nature of the widow's right, and confuses the right itself with the measure of compensation to be paid under it. While it is true that a widow's right to compensation for the death of her husband is based primarily upon the consequences to her of his injuries, and is so distinct and separate from his right to compensation that nothing he does with respect to his own right can abridge

or in any way affect hers, both arise out of the same contract of hiring, and each springs from the same circumstance of injury to the husband in the course of his employment. Although the one is so independent of the other that a judicial determination of the husband's right is not res adjudicata of the widow's, and the statutory limitation upon the assertion of hers cannot be affected by his neglect or refusal to pursue his, nevertheless, they are rooted in a common origin, and are to be measured by the terms of the husband's contract of employment, into which article III, secs. 302($a$) and 303 of The Workmen's Compensation Act, supra, writes its provisions respecting the amount of compensation payable in the event of injury to the employe while employed thereunder, and expressly provides "shall bind the employe, his or her wife or husband, widow or widower, next of kin, and other dependents."

The validity of workmen's compensation acts is sustained as not being an infringement of the constitutional guaranty of freedom of contract, because such acts do not force compliance with their provisions upon the contracting parties, but merely provide that they shall be applicable if the parties agree to accept the act, implying their acceptance in the absence of express agreement to the contrary. The immediate applicability to all current employments of changes in the compensation law subsequent to the making of an original contract of employment is effected by implying acceptance of the act "in every contract of hiring renewed or extended by mutual consent," and treating each day's employment as a renewal or extension of the original contract, and therefore as a new contracting. In this way existing employment contracts are moulded to conform to changes in the law, and the benefits of subsequent compensation legislation are promptly and uniformly secured by all workmen and their employers, regardless of when the employment begins. The right of the widow, as well as that of her husband, is, therefore, contractual in its fundamental

nature. Although the terms of the contract may be formulated and dictated by law, the rights of the parties to it spring, not from the law without regard to their wishes, but from the fact that they have chosen to contract upon those terms, and the compensation payable for a particular injury is measured by the contract in force when the injury is suffered.

While the extent and character of an injury may not, in the course of nature, be immediately disclosed, and hence the injured party's right to demand compensation, as distinguished from his cause of action, may not arise until a later date, the injury is inflicted when the accident happens, its subsequent effects being merely the consequences flowing from it. This being so, the rights and duties of the present parties under the contract became fixed when the widow's husband was injured, notwithstanding her ability to demonstrate its consequences to her did not mature until a later date. The length of time that may elapse after the receipt of an injury, during which it progressively develops from cause to effect in an uninterrupted chain of natural events culminating in death, is unimportant. The final result is attributable to the injury as its original cause. Claimant is not entitled to compensation because her husband died of injuries received in an accident, but because he died of injuries accidentally suffered in the course of his employment, and at a time when he had a contract of hiring which provided that in the event of death his widow should receive the compensation specified therein. If we were to hold that she suffered no injury until her husband died, she would have no right to compensation, because, on that date, no accident happened in the course of his employment, and this necessary prerequisite to fixing liability on defendant would be wanting. On the other hand, had he died while he was actually employed, of injuries suffered previous to his employment, the widow would not have been entitled to compensation, because the accident which caused death would not in that event have happened in

the course of his employment, notwithstanding that death did. Both circumstances, namely, the accident in the course of employment, and the death as a result thereof, must be present to impose liability on an employer; and, as each day's employment is, in effect, a new employment based upon a new contract of hiring, the first of these circumstances would be wanting if the injury to the widow is to be referred to the contract in force at the date of death. It is only by attributing the death to the employment at the date of the accident that all the requirements for fixing responsibility on the employer can be met.

Claimant contends that the Act of 1937 is applicable to the present case because the contemporaneous legislative history of the act discloses a legislative intention to make it retroactive and applicable to accidents occurring before its effective date. In support of his contention, it is pointed out that the amendment expressly repealed section 505 of the original act, which provided that it should "not apply in the case of an accident occurring prior to the first day of January next succeeding its passage and approval". This, it is argued, evidences the legislative purpose to make the amendment retroactive. It is by no means clear that such was the legislative intent. The repealed section dealt with the provisions of the original act, and manifestly referred to the date when the original act went into effect. That date had passed when the amendment was enacted, and were it pertinent to speculate upon the legislative purpose in repealing it, the desirability of dropping a section which had already accomplished its object, and had no further value as legislation, would appear to be at least as probable a reason for doing so as that advanced by claimant. Moreover, the Statutory Construction Act of May 28, 1937, P. L. 1019, which had already been passed by the same legislature and approved by the Governor, obviates the necessity for inserting such provisions in particular acts, and it might well be argued from the standpoint of contemporaneous legislative history that section 505 was repealed because

the legislature intended the amendment to be interpreted in accordance with the rule laid down in that act, which expressly provided, in section 56, that no law "shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature". This rule of construction raises a strong presumption against a legislative intent to make the amendment under consideration retroactive, for it must certainly be conceded that such an intent is not "clearly and manifestly" disclosed by the mere repeal of section 505 of the original Workmen's Compensation Act. And finally, if there be any force in the line of reasoning advanced by the claimant, the retention in the amendment of section 503 of the original act, which provides that nothing therein "shall affect or impair any right of action which shall have accrued before this act shall take effect", strongly negatives the suggestion that the legislature intended the act to be retroactive.

We do not consider it necessary to attempt to reconcile or distinguish the conflicting authorities on this question from other jurisdictions. Many of them turn upon an interpretation of the language of the statute in force in the particular jurisdiction, and it will be sufficient to observe that such as are in accord with the conclusion here reached appear, in our judgment, to be supported by a more accurate and better reasoning: McPhail v. Latouche Packing Co., 8 Alaska 297; Hardin v. Workmen's Compensation Appeal Board et al., 118 W. Va. 198, 189 S. E. 670; Coté, Admrx., v. Bachelder-Worcester Co., 85 N. H. 444; Michigan Central R. R. Co. v. Vreeland, 227 U. S. 59; Industrial Commission of Ohio v. Sodec, 35 Ohio App. 177, 172 N. E. 292; State ex rel. v. District Court of Hennepin County, 131 Minn. 96, 154 N. W. 661.

We, therefore, conclude that the compensation to which claimant is entitled in this case is that prescribed by the Act of 1929, which was in force when the accident happened that caused her husband's death, and that the Workmen's Compensation Board erred in awarding com-

pensation to her on the basis of the provisions of the Act of 1937. As this is the only question raised by the appeal, it will not be necessary to delay final action in the case by sending it back to the Workmen's Compensation Board for a mere mathematical recomputation of the award. All the data required for this purpose is in the present record. Accordingly, the appeal is sustained, and the decision of the Workmen's Compensation Board is reversed. Counsel will prepare and submit to the court a form of final judgment to be entered in accordance with this opinion.